[S. F. No. 10997. In Bank.—August 25, 1924.]

T. W. HARLAN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—FATAL INJURIES TO EMPLOYEE— EMPLOYER AND EMPLOYEE.—Fatal injuries to an employee caused by a collision between an automobile and a locomotive and occurring when said employee was being transported by said auto-

---

1. Injuries received while riding to or from work in employer's conveyance as arising out of and in the course of employment, notes, 10 A. L. R. 169; 21 A. L. R. 1223; 24 A. L. R. 1233.

mobile from one of the employer's farms to another of his farms to perform certain duties, arose out of and in the course of said employee's employment within the meaning of the Workmen's Compensation Act.

[2] ID.—DEPENDENCY—SECTION 14 (c) OF ACT—CONSTRUCTION OF.—Under section 14 (c) of the Workmen's Compensation Act, which provides that "No person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such employee, or unless such person bears to such employee" any of the therein specified relationships, including that of aunt, if either of the two conditions or relationships described therein exist the dependent person is entitled to the benefits conferred by the statute. The first requirement is satisfied by establishing that the dependent was a member in good faith of the family or household of the employee, in such a case no question of relationship by consanguinity or according to the rules of affinity being involved; and on the other hand, good faith as to family or household membership is not a necessary prerequisite to the right of recovery under the relationship or kindred clause.

[3] ID.—DEPENDENCY OF AUNT UPON MINOR EMPLOYEE—RESIDENCE—INTENTION—EVIDENCE.—In a proceeding to annul an order of the Industrial Accident Commission awarding compensation to a maternal aunt of a deceased employee, who was an illegitimate minor child, the evidence having shown that he was reared from infancy by the aunt, living with and treated by her as her own child, that he contributed to her support, and that it was the understanding between the aunt and said minor that his leaving the family home to accept the employment in which he met his injuries was only temporary and that he was to return home, the fact that the employer expected to employ said minor as long as he gave satisfaction was not proof that he was a member of the employer's family or household; nor, according to the intention of said minor, was his place of residence or domicile changed by his temporary employment.

[4] ID. — ABANDONMENT OF MINOR BY MOTHER — EVIDENCE. — In such proceeding, there was a clear abandonment of the minor by the mother and the aunt stood in her place.

[5] PARENT AND CHILD—ABANDONMENT—EARNINGS.—Abandonment by the parent is presumptive evidence that the parent relinquishes

2.   Who are dependents within the meaning of compensation statutes, notes, Ann. Cas. 1913E, 480; Ann. Cas. 1918B, 479; 13 A. L. R. 686; 30 A. L. R. 1253; L. R. A. 1918F, 483. See, also, 28 R. C. L. 770.

3.   Applicability of compensation statutes to minors, note, L. R. A. 1918F, 209. See, also 28 R. C. L. 779.

all right of controlling and receiving the earnings of his or her child.

[6] ID.—CUSTODY—RESIDENCE.—A parent not entitled to the custody of a child has no right to control his residence.

[7] WORKMEN'S COMPENSATION ACT — ABANDONMENT — DEPENDENCY— DISCLAIMER BY MOTHER—CONSTRUCTION OF.—In such proceeding, a disclaimer by the natural mother of such minor, disclaiming dependency upon him or any interest in compensation on account of dependency, in effect amounted to an acknowledgment of emancipation if abandonment by her was doubtful, and would be sufficient to free the minor from her parental control.

[8] ID.—DEPENDENCY — SECTION 14 (c) OF ACT — CONSTRUCTION.—In such proceeding, in order to show dependency under section 14 (c) of the Workmen's Compensation Act, which provides in part that "No person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such employee," it was not necessary to show that the aunt of such minor was a member of the family or household of which the deceased minor employee was the head or master. All that the act requires is a *bona fide* family or household and the existence of dependency of a member thereof.

[9] STATUTORY CONSTRUCTION—INTENT.—The language of an act must be construed to effect its evident object and purpose.

[10] WORKMEN'S COMPENSATION ACT—AUNT MEMBER OF FAMILY OR HOUSEHOLD OF DECEASED—FINDING—AWARD.—In such proceeding, the finding of the Industrial Accident Commission that the aunt of such minor employee was in good faith a member of the family or household of such employee was sufficient to support the award made in favor of the aunt.

[11] ID. — REHEARING — CERTIORARI — SECTION 67 (A) OF ACT — CONSTRUCTION.—Under section 67 (a) of the Workmen's Compensation Act, after a rehearing once granted and decision thereon, an application may be made for a writ of review without a second petition for a rehearing being made.

---

(1) Workmen's Compensation Acts, p. 73, sec. 63.    (2) Workmen's Compensation Acts, p. 57, sec. 49.    (3) Workmen's Compensation Acts, p. 57, sec. 49.    (4) Workmen's Compensation Acts, p. 115, sec. 114.    (5) 29 Cyc., p. 1627.    (6) 29 Cyc., p. 1584 (1926 Anno.). (7) Workmen's Compensation Acts, p. 57, sec. 49.    (8) Workmen's Compensation Acts, p. 57, sec. 49.    (9) Workmen's Compensation Acts, p. 40, sec. 34; 36 Cyc., pp. 1110, 1111.    (10) Workmen's Compensation Acts, p. 117, sec. 115 (1926 Anno.).    (11) Workmen's Compensation Acts, p. 120, sec. 123 (1926 Anno.).

PROCEEDING in Certiorari to annul an order of the Industrial Accident Commission awarding compensation. Award affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander for Petitioners.

Warren H. Pillsbury for Respondents.

Frank J. Creede and John J. Taheny for State Compensation Insurance Fund, *Amicus Curiae.*

SEAWELL, J.—Application for a writ to review and annul an award made by the Industrial Accident Commission.

The employee in this case was an illegitimate male child. The writ raises the question whether the applicant, widow and sister of the full blood of the mother of said illegitimate minor child and therefore a maternal aunt, and who received him at birth into her family and treated him in all respects as her child and a member of her family and which child had from the time he was physically able to do so, contributed to the support of said aunt and her minor children and was so contributing at the time he was accidentally killed in the performance of services which were in the course of and arose out of his employment, is entitled to compensation within the intent and meaning of the dependency provisions of section 14 (c) of the "Workmen's Compensation, Insurance and Safety Act" of this state (Stats. 1917, p. 831), which read as follows:

"No person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such employee, or unless such person bears to such employee the relation of husband or wife, posthumous child, adopted child, or stepchild, father or mother, father-in-law or mother-in-law, grandfather or grandmother, brother or sister, uncle or aunt, brother-in-law or sister-in-law, nephew or niece."

The Commission, upon a rehearing, specifically found that said illegitimate minor had since infancy lived in the home of the applicant and his absence therefrom at the time he

was killed was temporary merely; further, that applicant was in good faith a member of the family, or household of said illegitimate minor at the time of his death; that applicant was his aunt on his maternal side and is entitled to all the rights and benefits of an aunt under the compensation act that could be conferred upon legitimacy; that section 1388 of the Civil Code of California substantially legitimatizes illegitimate children as far as relatives on the maternal side are concerned and thereby furnishes an exception to the common-law rule that such children are *nullius filius;* that said illegitimate child left surviving him said applicant and she was a member of the family or household of said employee and was partially dependent upon him for support.

Such findings only as are necessary to sustain the Commission's award will be noticed.

Said minor was at the time of his death an employee of T. W. Harlan, the owner of two large farms situate near Willows, Colusa County, but separated by some distance. Said minor in company with four other employees was being transported by automobile from one of said farms or ranches to the other to perform certain duties. In crossing the railroad track of the Southern Pacific Company the automobile containing said employees was struck by a locomotive, causing the death of four of said employees, including said minor, and wounding the fifth. [1] That the injuries inflicted upon said employees and which resulted in death arose out of and were in the course of their employment within the meaning of the Compensation Act, we have no doubt. That question was decided by this court's refusal to grant a writ of review wherein the circumstances of this accident were fully related and finally determined in a proceeding instituted by the widow of one of said employees in the case entitled *"T. W. Harlan et al.* v. *Industrial Acc. Com. et al.,"* S. F. No. 10927. We are not disposed to again review those findings.

It cannot successfully be disputed, and we do not understand that it is disputed, that applicant was partially dependent upon said minor for her support. A determination of that issue in applicant's favor leaves but two questions remaining for solution, to wit, "Has applicant shown herself to be included within the enumeration of persons who

are entitled to claim as legal dependents as specified in section 14 (c) of the Compensation Act''; second, ''Has petitioner, insurance company, lost its right to apply for a writ of review for the reason that it did not apply to respondent Industrial Accident Commission for a rehearing of the decision rendered after a rehearing once granted.'' In other words, was petitioner required to petition for a second rehearing before it was entitled to apply for the writ herein prayed for?

[2] Returning to a consideration of the first proposition, it is quite clear that section 14 (c) provides that if either of the two conditions or relationships described therein exist the dependent person is entitled to the benefits conferred by the statute. The first requirement is satisfied by establishing that the dependent was a member in good faith of the family or household of the employee. In such a case no question of relationship by consanguinity or according to the rules of affinity is involved. If it be determined that the applicant was in good faith a member of the family or household of said employee then it becomes immaterial what the degree of relationship was, if any, that existed between applicant and said employee. On the other hand, good faith as to family or household membership is not a necessary prerequisite to the right of recovery under the relationship or kindred clause. Such right exists by force of relationship alone, if dependency is shown.

A determination of the question whether dependent was ''in good faith a member of the family or household of such employee'' (said minor), as that clause must be construed, requires a brief review of the uncontradicted evidence given at the hearing.

Said minor was, at the time he met his death, of the age of eighteen years and unmarried. He was born out of wedlock, at the home of applicant. His mother was a young woman who had been deluded into the belief that she had been lawfully wedded to the father of said minor under a contract of marriage. Upon discovering the invalidity of common-law marriages in this state and realizing the ignominy of her condition she became embittered against the man who had deceived her, refused to consent to a solemnization of marriage with him, repudiated and abandoned the child, and went her way. Applicant took said minor into her family,

gave it the family name and reared it as a twin brother of her eldest son, who was born two months after the birth of said illegitimate child. The family at that time and until augmented by the birth of her son consisted of applicant, her husband, and said illegitimate child. Subsequently two other children, a son and daughter, were born as the issue of applicant and her husband. None of applicant's children to the day of the death of said illegitimate child knew or had ever suspected, nor did said illegitimate child itself know, that he was not in fact a brother. Applicant and her husband were afterward divorced. The wife retained the custody of said illegitimate child and her two younger children while her older son went to live for a time with his father, who later married. Applicant being without sufficient funds or property to support herself and children was compelled to seek employment, offering herself as nurse, hair-dresser, and physical culturalist. Said illegitimate minor upon arriving at an earning age was employed by a firm at Vancouver, where the family was then residing, at a wage of $15 per week. He turned the whole of his earnings over to his putative mother for the support of the family. Later he attended an auto school and in March, 1923, applicant moved with her family to San Francisco. There said minor was employed during the months of April, May, and June, 1923, at a wage of $18.50 per week. Applicant was then in poor health and under the care of a physician. She had recently removed from Vancouver to San Francisco with the expectation of re-establishing herself in the business in which she had formerly engaged. Finding her health broken and being depleted in finances and said minor being without present employment she chanced to meet said T. W. Harlan, of Willows, in San Francisco and made the arrangements whereby said minor was to be employed to operate farm tractors at the place where six days later he lost his life. It was the understanding between applicant and said minor that his employment at Willows was only temporary and that he was to return to her and the family just as soon as she could rehabilitate and establish herself in business in San Francisco, which was the family home. It was the intention and understanding that he would remain in the employ of Mr. Harlan until the following Christmas holidays. **[3]** The fact that Mr. Harlan expected to employ

said minor as long as he gave satisfaction is not proof that
he was a member of his family or household.   Any employer
of labor would have said as much.   But this does not bind
the employee to change his domestic relations or residence.
He was at best an employee.   When he failed to give satis-
faction as such he was no longer entitled to remain in the
household.   Petitioner quotes a portion of applicant's testi-
mony with reference to the time when said minor was to
return to his home which was dependent upon the time re-
quired by her to "get her business going."   The answer
given by the witness to the effect that said minor was to
come to her *if he could* had reference to her ability to com-
plete her plans within a definite period.   As soon as and
when this was done he was to come to her.   This portion
of her testimony, read with reference to its context, makes
it perfectly clear that it was the intention of both parties
that said minor's absence was in the performance of tempo-
rary employment.   There is absolutely nothing in the evi-
dence which would justify the inference that the household
or family ties had become severed.   If the separation, under
the circumstances of the situation before us, can be regarded
as a severance of family or household relations there would
be but few families or households that could be said to be
intact.   Such a relationship resting upon eighteen years of
reciprocal acknowledgment of parent and child is not to be
lightly set aside.   According to the intention of said minor
his place of residence or domicile was not changed by his
temporary employment at Willows.   Applying section 52 of
the Political Code, subdivisions 1 and 7, there can be no
doubt as to the residence of said minor.   Subdivision 1
provides that "It is the place where one remains when not
called elsewhere for labor or other special or temporary pur-
pose, and to which he returns in seasons of repose"; sub-
division 7 provides that "The residence can be changed only
by the union of act and intent."   It was clearly not the
intention of said minor to change his residence to Willows.
[4]   In this case there had been a clear abandonment by
the mother and the aunt stood in her place.   [5]   Abandon-
ment by the parent is presumptive evidence that the parent
relinquishes all right of controlling and receiving the earn-
ings of his or her child.   (Sec. 211, Civ. Code.)   [6]   A
parent not entitled to the custody of a child has no right

to control his residence. (Sec. 213, Civ. Code.) The natural mother of said minor, while not expressly acknowledging maternity in herself, caused to be filed with the Commission her affidavit disclaiming any interest in or to any compensation that might be found to be owing on account of the death of said minor. She avers that she "has no interest in or no right to any compensation; that she has never received any money from and has never been dependent in any manner nor to any extent whatsoever upon said deceased and to the best of her knowledge and belief 'applicant' was and is the sole person dependent upon said deceased, and the sole person having any right to or interest in such compensation." [7] The disclaimer in effect amounts to an acknowledgment of emancipation if abandonment was doubtful, and would be sufficient to free the child from her parental control. There were but two persons who could have exercised the right to control the residence of said minor child, to wit, the applicant, with whom he had always resided and to whom he had rendered obedience, and the minor himself. The home of applicant in the city of San Francisco was selected as the residence of both. Domicile could not be more firmly established than it is shown to be by the facts and circumstances of this case. We feel satisfied that the abuses which have been suggested by the *amicus curiae* will find no protection in this opinion by reason of the conclusion compelled by the evidence and as found by the Commission to the effect that the applicant was in *good faith* a member of said minor's household as herein construed. Proof of good faith more impressive in its convincing force can scarcely be imagined than that which is found in the tragic story of the birth, life and death of this unfortunate youth and the commendable efforts of the putative mother to lift him from without the shadow of illegitimacy by giving him a name and a place in her family. Her example in this respect will furnish no encouragement for those who would improvise family relationships for fraudulent purposes.

We now come to a consideration of the effect to be given to the words "of such employee" as used in section 14 (c) of the Compensation Act, which reads: "No person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such em-

ployee." It is petitioner's claim that a natural construction of this clause would exclude applicant from the class which the act was designed to benefit. In other words, it is contended that it is not sufficient to show that said deceased employee was in good faith a member of applicant's family or household or that both were members of or belonged to the same family or household, but it must appear that the applicant was a member of the family or household of which said deceased employee was the head or master. **[8]** Such a restricted construction would tend to defeat rather than to promote the purpose of the act. We think that petitioner has lost sight of the object and purpose of the law. It is not to be doubted that the words "of such employee" are words of identification and relation rather than words of proprietorship or possession within the contemplation of the act. In this connection the preposition "of" is very commonly used and has a meaning well understood. The Standard Dictionary thus defines it: "(1) associated or connected with, usually in some causal relation, efficient, material, formal or final." It will be noted that the act does not employ the term "head of the family" for the reason, doubtless, that the head of the family or person who by common consent exercises authoritative domestic control may not, in fact, be a bread-winner at all, but in many cases a dependent. The act cares for the support of dependents, and does not concern itself with the real or nominal heads of families or households except so far as that station may have a causal relation to the support of dependents of the household. **[9]** The cardinal rule of statutory construction is too well settled to the effect that the language of an act must be construed to effect its evident object and purpose, to require citations of authority. The object and purpose of the Workmen's Compensation, Insurance and Safety laws is so clearly stated in the following language that there can be no mistake concerning the purpose aimed to be accomplished. To this end it must be liberally construed. (Sec. 69, Workmen's Compensation Act.) Section 1, in defining the scope and intent of the act declares that "a complete system of workmen's compensation includes adequate provision for the comfort, health, safety and general welfare of any and all employees *and those dependent upon them for support* to the extent of relieving from the consequences

of any injury incurred by employees in the course of their employment, irrespective of the fault of any party.'' (Italics ours.) Considering this language in connection with section 14 (c) it is very apparent that applicant comes within the intent of said section and must be regarded as a dependent member of the family of the deceased employee and entitled to the benefits conferred by the statute. We do not think that the legislature intended to prescribe over-nice rules by which the head of a family should be determined. It may often become a very difficult question in cases of broken families where increasing responsibilities fall upon the individual members of the household in proportion to their ability to sustain them to determine which one is the technical head of the family. Such responsibilities are often divided and shifted from one to the other and depend upon many varying circumstances peculiar to the particular family. The Workmen's Compensation Act does not, in our opinion, make the question of dependency rest upon such refinements. All that it requires is a *bona fide* family or household and the existence of dependency of a member thereof as illustrated by the facts of the instant case.

While the precise question now under consideration is a new one in this state it was decided by the supreme court of Michigan in *Peay* v. *Fred Kulow & Co.*, 226 Mich. 512 [197 N. W. 1020]. In that case neither the facts nor the statute were as favorable to the claims of the dependent as the facts and law in the instant case are to this applicant. The statute of that state provided: ''No person shall be considered a dependent, unless he or she is a member of the family of the deceased employee, or unless such person bears to said deceased employee, the relation of husband or widow, or lineal descendant, or ancestor, or brother or sister.'' It will be observed that our statute is broader inasmuch as it *ex industria* includes a member *of the household* as well as a member of the family and extends the line of collateral kindred. In that case a youth of the age of fourteen years whose parents had died, went to live and make his home with his aunt. His status with his aunt's family was the same as that of a son. When working he contributed a portion of his wages to said aunt. The lad found employment at Detroit while the aunt lived in Youngstown, Ohio. He had resided apart from her for a period of

three years but contributed on an average of $10 per month to her support. While at work he fell and died from the effects of the injuries so received. The point made in that case, as here, was that he was not a member of the aunt's family and therefore she could not recover under the Compensation Act of the state of Michigan. The court, in its discussion of this objection, said:

"Counsel construes this statute to mean that no one outside of the specific blood classes can be a dependent, unless he or she is a member of a family of which the deceased was at the head; in other words, that plaintiff was not a member of deceased's family. I am of the opinion that this construction is too restricted. The idea which underlies and which gave birth to the Compensation Law was to afford timely relief to persons who were receiving care and support from him. In view of this, it would be more nearly in accord with the spirit of the statute to construe it to apply to any person who was a member of the same family of which the deceased was a member. It is not uncommon to hear a wife speak of *her* family, *her* church or *her* lodge, not because she is at the head of the family, church, or lodge but to indicate her relation to them. It is not one of those cases where the word 'of' is used as a sign of possession, but is used rather to indicate his relation to the family. It appears to me that the language of the statute was used in this sense. Had the Legislature intended the statute to have the meaning contended for, may we not assume it would have indicated 'the family of which the deceased was at the head'? If the construction contended for is to prevail, foster parents can never, under these circumstances, take an award from one who was a member of the family, and had been cared for and treated as a child. The deceased had been taken when a young boy, and given a home, and treated as a son in plaintiff's family. He was unmarried, and plaintiff's home was the only home he had, and he was contributing to the upkeep and maintenance of that home. We think it is within the spirit of the statute to hold that plaintiff was a member of the same family that deceased was a member of, and hence comes within the class of dependents that are entitled to an award."

[10] The finding of the Commission in the literal language of the act as to family or household membership is

sufficient to support the award under the construction we have given the act.

In view of our construction of section 14 (c) of the Workmen's Compensation Act it becomes unnecessary to consider the rules of succession as affecting illegitimates as they existed at common law or as since modified by the statute of this state and many of our sister states. We are not here considering a statute of succession, which was the subject of consideration by most, if not all, of the cases cited by petitioner. The real question is pointedly discussed in *Portin* v. *Portin* (Tenn.), 261 S. W. 362, wherein it is said: "The Workmen's Compensation Act is not a statute of descent or distribution. It was intended to relieve society of the burden of caring for injured workmen or the dependents of deceased workmen, and to place that burden upon the industry employing the workman. In case of the workmen's death, the lawmakers were concerned for the care of his dependents, and not about the devolution of the workman's property. The dependency of the claimant is the true basis of his right to recover compensation rather than blood or marriage. Relationship is really only evidence of dependency."

In *Scott's Case*, 117 Me. 436 [104 Atl. 794], it is said: "It is a well-recognized rule of construction of acts of this kind, however, and expressly enjoined upon those whose duty it is to administer this statute, that it shall be construed liberally with a view to carrying out its general purpose, and not strictly as other statutes in derogation of common law rights usually are." (See, also, *Piccinim* v. *Connecticut Light & Power Co.*, 93 Conn. 423 [106 Atl. 330].)

A decision on the question of legal succession so far as the illegitimacy of said minor is concerned is rendered unnecessary by reason of the conclusion we have reached as to said minor's status in applicant's household and the findings of the Commission on the issue of succession are not, for the reasons heretofore assigned, material.

Only one other question, which is raised by respondent, remains for consideration, to wit, whether petitioner, Ocean Accident and Guarantee Corporation, Limited, has lost its right to apply to this court for a writ of review for the reason that it did not apply to respondent Industrial Accident Commission for hearing after rehearing once granted.

[11] We think the act furnishes no substantial grounds for the claim that a second petition for a rehearing is required before an application may be made to this court for a writ of review. The act contemplates a speedy determination of questions involving the right to compensation and the Commission is given broad powers to the end that long delays may be avoided. It is the policy of the law in general practice to consider but one application for a rehearing and there is less justification for an exception to this rule in proceedings that are somewhat summary in character, as the act under consideration undoubtedly is. The language of section 67 (a) is determinative of the question against respondent's claim. It provides: "Within thirty days after the application for a rehearing is denied, or, if the application is granted, within thirty days after the rendition of the decision on the rehearing, any party affected thereby may apply to the supreme court of this state, or to the district court of appeal of the appellate district in which such person resides, for a writ of *certiorari* or review, hereinafter referred to as a writ of review, for the purpose of having the lawfulness of the original order, rule, regulation, decision or award, or the order, rule, regulation, decision or award on rehearing inquired into and determined."

From the above language it will be noted that *any party* affected by the Commission's decision may apply to this court or to the district court of appeal for a writ of review without petitioning for a second rehearing. The case of *Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.*, 190 Cal. 97 [210 Pac. 628], is an authority supporting what we have here said. The reasoning in *Carroll et al.* v. *Industrial Commission of Colorado et al.*, 69 Colo. 473 [19 A. L. R. 107, 195 Pac. 1097], and *Schrewe* v. *New York Cent. R. R. Co.*, 192 Mich. 170 [158 N. W. 337], is also applicable to the question.

The award is affirmed.

Lawlor, J., Lennon, J., Waste, J., Richards, J., Shenk, J., and Myers, C. J., concurred.