[S. F. No. 13982. In Bank.—January 28, 1931.]

GENEVIEVE DELLEPIANI et al., Petitioners, v. IN-
DUSTRIAL ACCIDENT COMMISSION and MAR-
KET STREET RAILWAY COMPANY, Respondents.

George C. Faulkner for Petitioners.

Edward O. Allen for Respondents.

CURTIS, J.—Emilio Dellepiani was on the tenth day of December, 1928, in the employ of the Market Street Railway Company as a car cleaner. The place of his employment was at the car barn of the company located at the southeast corner of San Jose Avenue and Geneva Avenue in the city of San Francisco. Dellepiani resided at 251 Tingley Street, San Francisco, and in going to and from

his work, he usually boarded one of the company's street-cars at or near Tingley Street and San Jose Avenue, and traveled south on San Jose Avenue some eight or nine blocks to Geneva Avenue, where he would leave the street-car and cross the street to his place of employment. The company permitted its employees to ride on its cars without paying fare, and for this purpose it issued to some of its employees, including Dellepiani, tickets, each one of which entitled the holder thereof to a ride free of charge. Dellepiani's work began at 5:30 in the evening and continued for ten hours. On the evening of December 10, 1928, following his usual custom Dellepiani boarded one of the company's cars at or near Tingley Street and rode therein to Geneva Avenue and San Jose Avenue, arriving there at about 5:28 o'clock. Upon the car stopping at that point, Dellepiani left the car and started to walk across San Jose Avenue to the car barn, his place of employment, when he was run over by a passing automobile and killed. On this evening Dellepiani paid no fare for riding on the company's car. He was acquainted with the motorman, who admitted him to the car through the front door, and when the conductor came forward to collect Dellepiani's fare, the motorman informed the conductor that Dellepiani was an employee of the company, and thereupon the conductor permitted him to ride free of charge and without collecting from him any fare or taking up his employee's ticket. Dellepiani left surviving him as dependents, a wife and two minor children. ▪ An application was presented to the Industrial Accident Commission for compensation by said dependents, which was denied by the Commission on the ground that the injury sustained by Dellepiani and which caused his death did not arise out of or in the course of his employment with the respondent company.

The position of respondents is that Dellepiani at the time he met his death had not yet reached his employer's premises and "therefore the injury which caused his death did not arise out of or occur in the course of his employment". In other words, respondents rely upon "the coming and going rule" which denies to employees, or their dependents, any relief for an injury sustained while the employee is going to or returning from his work or place of employment.

On the other hand, petitioners contend that the facts of this case bring it within an exception to the above rule, which exception permits a recovery for an injury sustained by an employee whether going to or returning from his work, when the employer furnishes to the employee transportation to and from his place of employment. In the type of cases coming within this exception it is held that "when transportation is furnished the employee as an incident to the employment, to convey an employee to and from the place of employment, an injury suffered by the employee going or coming in the vehicle furnished by the employer, and under the control of the employer, arises out of and is in the course of the employment within the meaning of the Compensation Act". (*Dominguez* v. *Pendola*, 46 Cal. App. 220 [188 Pac. 1025]; *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 Pac. 654].)

In each of these two cases, however, the employee was injured while riding in the vehicle or conveyance provided by his employer for the express purpose of transporting the employee to the place of his employment. They differ in this respect from the present action where the facts show that the employee sustained the injury which caused his death after he had left the conveyance of his employer and while he was crossing a public street for the purpose of reaching the premises of his employer. The same may be said regarding the case of *Lamm* v. *Silver Falls Timber Co.*, 133 Or. 468 [277 Pac. 91, 286 Pac. 527, 291 Pac. 375], cited and relied upon by petitioner. In that case the plaintiff was employed by the defendant at the latter's logging-camp. The defendant maintained a logging railroad from its camp to the town of Silverton. Practically the only way to reach this camp was to take passage upon said railroad at Silverton, and to ride thereon to the logging-camp. Defendant furnished free transportation on its said railroad to all of its employees. The plaintiff was a passenger on said railroad and was returning from a week-end visit with his family who resided at Silverton. The train after moving at a speed of from fifteen to twenty miles per hour stopped suddenly with the result that the plaintiff was seriously injured. He instituted an action at law to recover damages sustained by rea-

son of his injuries and recovered a judgment for $25,000. On appeal the Supreme Court of the state of Oregon reversed the judgment on the ground that the injury sustained by plaintiff was an industrial injury and one within the exclusive jurisdiction of the Industrial Accident Commission of that state.

To the same effect are the Donovan case, 217 Mass. 76 [Ann. Cas. 1915C, 778, 104 N. E. 431], and numerous other cases cited by counsel for petitioners in his points and authorities. In each and all of these cases the injury to the employee was sustained while such employee was being conveyed to or from his work in a conveyance furnished by his employer. In none of them was the question presented or decided as to the liability of the employer for an injury sustained by an employee while crossing a public street for the purpose of reaching the place of his employment, after leaving the conveyance of his employer.

Upon this latter question, and in support of their contention that the employee under such circumstances is within the protection of the Workmen's Compensation Act, petitioners have cited a large number of authorities. Among them are *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418 [30 A. L. R. 532, 68 L. Ed. 366, 44 Sup. Ct. Rep. 153], *Le Blanc* v. *Ohio Oil Co.*, 7 La. App. 721, *Lumberman's Reciprocal Assn.* v. *Behnken*, 112 Tex. 103 [28 A. L. R. 1042, 246 S. W. 72], and *Procaccino* v. *E. Horton & Sons*, 95 Conn. 408 [111 Atl. 594]. A reading of these cases will show that each of them presents some special and particular feature that takes it out of the general rule applicable to injuries sustained upon public streets.

In the case of *Cudahy Packing Co.* v. *Parramore, supra,* the practicable way of ingress and egress for employees to and from the plant of the Cudahy Packing Company was along a way or road crossed by the track of the Rio Grande Western Railroad. While crossing this track in an automobile of a fellow employee, Parramore was killed. The Supreme Court of the United States affirmed a judgment in favor of the dependents of Parramore. The basis of its decision may be found in the following statement found on page 426 of the opinion: "The railroad over which the way extended was not only immediately adjacent to the plant.

but, by means of switches, was connected with it and in principle it was as though upon the actual premises of the employer." In *Le Blanc* v. *Ohio Oil Co., supra,* the plant of the employer was bisected by a public highway. Employees were continually required in the performance of their duties to pass over this highway in going from one department of the plant to another. It was accordingly held that the employer by this peculiar location of its plant had made the intervening highway a part of its premises, and that when an employee alighted thereon from a conveyance in which he was riding for the purpose of commencing his work, he was upon the premises of his employer, and any injury sustained while on said highway was an injury sustained while on the premises of his employer and, therefore, it was an injury which arose out of and in the course of his employment. Practically the same state of facts was presented in the case of *Lumberman's Reciprocal Assn.* v. *Behnken, supra.* In *Procaccino* v. *E. Horton & Sons, supra,* the employee was injured while crossing over a footbridge along a path maintained by the employer over private property for the use of his employees in reaching his plant from the public highway. The court held that as the employer provided this means of approach to the place of employment, any injury sustained while using the same was an injury sustained on the premises of the employer and therefore compensable under the Workmen's Compensation Act.

Petitioners also cite in support of their contention that the deceased was on the premises of his employer while crossing the street after leaving the street-car of the company, the case of *Howes* v. *Stark Bros. Nurseries & Orchards Co.,* (Mo. App.) 22 S. W. (2d) 839. They also rely upon *Scott* v. *Willis,* 150 Va. 260 [142 S. E. 400], to support their claim that "going from street car to curb, or *vice versa,* is part of free transportation". Neither of these cases is applicable to the case now under consideration. They are cases in which the employer engaged to transport his employee in a private conveyance of his own to and from the place of employment. In those cases the engagement of the employer was to deliver his employees to the place of employment, and at the close of the employment to the homes of the employees. In such cases if the employer compels or

permits his employees to leave the vehicle in which they are being transported in the middle of the street, so that to reach their destination the employees are compelled to cross over a part or the whole of the street, any injury sustained by an employee while thus upon the street is compensable. This principle was aptly stated by the court in the case of *Scott* v. *Willis, supra,* in the following language: "We think it can certainly be said that the transportation of this claimant to his home was not completed until he had reached a point which exempted him from the risks incident to that particular journey. He was not relieved of the peculiar risks incident to his journey while alighting from the truck or while necessarily in that part of the highway allotted to vehicles as distinguished from the sidewalks allotted to pedestrians. As in most accidents, it is a question of seconds. We think in this case that his journey had not ended at the time of the claimant's injury; that he was in the act of leaving the vehicle of his employer, seeking a safe place on the sidewalk; and that the injury was so close in time and space as to be an incident of the transportation, and hence that it arose out of and in the course of his employment."

In the case of the deceased, the respondent railway company made no agreement to deliver him to the place of his employment, or to his home after the day's employment had ended. The agreement or undertaking between said employee and the company was that the latter would furnish free transportation to the employee on its street-cars as the same were operated on and along the streets between the home of the employee and the premises of the company upon which the employee was employed. The intervening space between the employee's home and the place where he boarded said street-cars and that in the street between the car tracks and the premises of his employer were not covered by or embraced within the agreement of the company to transport him on its cars. While crossing the street from the street-car to his employer's premises he was not subjected to any of the hazards or dangers incident to the transportation which the company had agreed to furnish. These hazards were independent of and entirely distinct from those which might have been encountered or which might confront him

after entering upon the employer's premises for the purpose of following his employment. They were hazards which the employee assumed when he entered upon the street for the purpose of reaching his place of employment, to the same extent as any other passenger who leaves a street-car and crosses a public street risks the dangers of the street.

The theory upon which it is held that an injury sustained by an employee while traveling to or from work in a vehicle provided by the employer is compensable, is that the transportation so furnished to the employee is an incident to his employment and therefore the employee, while being transported, is engaged in the employer's business, and any injury sustained during said time is an injury arising out of and in the course of his employment within the meaning of the Workmen's Compensation Act. (Stats. 1923, p. 375). (*Dominguez* v. *Pendola, supra; Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 Pac. 654].) It follows, therefore, that any injury sustained by the employee before the period of transportation has commenced, or after it has ended and before the employee has reached the employer's premises, would not be an injury arising out of or in the course of his employment. This was decided in a late case by the Supreme Court of Utah, *Denver & R. G. W. R. Co.* v. *Industrial Acc. Com.*, 72 Utah, 199 [62 A. L. R. 1436, 269 Pac. 512]. In that case the employer furnished free transportation by means of a truck operated by one of its employees from its section-house to the place of employment. An employee named Massey together with a number of his fellow workmen lived near where the truck driver resided and kept his truck, which was about one mile from the section-house. These workmen were in the habit of boarding the truck near their homes, and riding thereon to the section-house. During one of these trips Massey was injured and sought to recover compensation for his injury. The Industrial Accident Commission made an award in his favor which was annulled by the court. In the course of the opinion, the court said: "Upon the facts, we think it plain that the employment in the present case included the transportation of the employee by the employer only from the section house to and from his place of work. That was the limit of the employer's engagement both with the employee and

the truck driver. Before arrival at the section house in the morning, neither were under the control of the employer. . . . We are led by the facts in this case to conclude that the relation or status of the parties herein as employer and employee did not exist until the employee reported for duty to the section house.''

Another case with a similar ruling is that of *De Voe* v. *New York State Rys.*, 218 N. Y. 318 [L. R. A. 1917A, 250, 113 N. E. 256]. In that case the employee was furnished free transportation upon the railway of his employer. After he had finished work for the day and as he was hurrying from his place of employment to catch one of his employer's trains, which was just coming to a stop in front of the car barn in which he was employed, he was struck by an automobile while crossing the street, and sustained injuries which caused his death. It was held by the Court of Appeals of New York that the injury was not compensable, the court saying: ''The question is whether death resulted from 'an accidental personal injury sustained by the employee arising out of and in the course of his employment'. The employee is not insured generally against accident while working for the street railway corporation. At home or on the street he may meet with an accident not arising out of or in the course of his employment. The act does not cover such cases. . . . He (the injured employee) was not injured while on duty within the precincts of the company.''

A third case in harmony with the two just cited is the case of *Ex parte Taylor,* or *Taylor* v. *Birmingham Elec. Co.*, 213 Ala. 282 [104 South. 527]. In that case Berry Taylor was an employee of the Birmingham Electric Company, and as part of his compensation received free transportation on the street-cars of the company. He was fatally injured in a public street just after he had left one of the company's cars on his way from his place of employment to his home. His wife, sole dependent, was denied compensation by judgment of the Circuit Court, and on appeal therefrom the Supreme Court of the state of Alabama affirmed the judgment. In its opinion affirming the judgment, the court said: ''The findings of fact, well supported by evidence set out in bill of exceptions, show deceased had left the street car and was in the public street when struck

by a passing automobile. It was immaterial whether he alighted or was struck within the zone covered by passing street cars on the track. He was in the public street, using it as such, and such use had no relation to service for the employer, was not the premises of the employer within subd. (j) of our compensation law. We adhere fully to the principles declared in *Ex parte Majestic Coal Co.*, 208 Ala. 86 [93 South. 728], and *Ex parte Louisville & N. R. Co.*, 208 Ala. 216 [94 South. 289]. Those cases and many others, holding that our Workmen's Compensation Law should have a liberal construction in furtherance of the humanitarian purposes leading to its enactment, are distinguishable from the case at bar.''

It is our opinion that the principles announced in these three cases are sound and that they govern the case now before us. The engagement of the employer in this case was to transport the deceased employee to a point along its line nearest his place of employment. Beyond that point and until he reached the premises of his employer, whether that distance was the width of only a part of an ordinary street, or whether it was a block or more, the employee was not under the control, direction or protection of the employer. He could choose any route of travel, and any means of conveyance that might appear to him to be feasible or desirable to reach the premises of his employer. The latter was without any authority or right to govern or interfere with the movements of the employee during this period of time. Under this state of facts, it cannot be held that the employee had either reached his employer's premises or was being conveyed thereto by his employer. The injury thus sustained was not one which arose out of or in the course of his employment. On the other hand, it was sustained by the employee while on his way to the premises of his employer and under such circumstances as to bring him within the "coming and going rule" as announced by the court in the case of the *Ocean Acc. etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313 [L. R. A. 1917B, 336, 159 Pac. 1041].

We have not attempted to analyze and distinguish all of the authorities which the industry of counsel has assembled and cited in his points and authorities in this proceeding.

We have, we think, given consideration to the principal cases cited, and sufficient to indicate that the award of the Commission must be affirmed, and it is so ordered.

Shenk, J., Waste, C. J., Langdon, J., Preston, J., and Seawell, J., concurred.