101 So.2d 361 (1957)
JACKSONVILLE COACH COMPANY, Employer, and United States Casualty Company, Carriers, Petitioners,
v.
Lennon Brinson LOVE, Employee, and Florida Industrial Commission, Respondents.
Supreme Court of Florida.
July 31, 1957.
Rehearing Denied April 14, 1958.
Barnes, Barnes, Naughton & Slater, Thomas W. Barnes and Claude K. Slater, Jacksonville, for petitioners.
John E. Mathews, Jr., Jacksonville, Burnis T. Coleman and Rodney Durrance, Tallahassee, for respondents.
O'CONNELL, Justice.
Petitioners, Jacksonville Coach Company, employer, and United States Casualty Co., carrier, seek to have reviewed the order of the full commission affirming the order of the deputy commissioner, wherein the respondent Lennon Brinson Love was held to have sustained an injury arising out of and in the course of his employment.
The employer operates the city bus system in Jacksonville. Claimant was employed by the company as a mechanic in its repair shop located on the west side of Riverside Avenue. On the morning of July 19, 1955 he left his home, walked about two blocks, and boarded a Jacksonville Coach Company bus at a regular bus stop. The bus, which he boarded at 7:00 o'clock a.m., was a regularly scheduled bus operated by the company for the general public along a regular route. At about 7:15 a.m. the bus stopped at a regular bus stop at the intersection of Riverside Avenue and McCoy Street. Claimant and the other passengers descended from the bus. The employer's office and shop were directly across Riverside Avenue from the bus stop. Claimant and another employee started to cross Riverside Avenue, whereupon claimant was struck by a passing automobile and suffered injury thereby.
Claimant was a member of the International Association of Machinists, a labor *362 union. By a contract of employment, negotiated by the union, claimant and other employees who were members of the union, as well as their wives, were entitled to free transportation on all lines of the employer in the City of Jacksonville at all times. Article Six of this contract reads as follows:
"Sec. 1. Free transportation shall be furnished all employees who are members of this Union upon presentation of proper credentials on all routes in the city. Employees who have been in the service of the Company for one (1) year or more shall be entitled to free transportation on all routes presently operated by the Company.
"Sec. 2. The wives of all employees covered by this agreement shall also receive free transportation on all City lines."
The Business Agent of the Union testified that the passes provided for under the contract "were considered a fringe benefit just the same as vacations, shift premiums and the like." The Deputy Commissioner in his order found that the free transportation was available to the holders of such passes regardless of the purpose for which the employee was riding the bus.
Claimant, who had been employed by the company since 1928, was in the habit of riding the bus to work about four mornings per week. About once a week he would drive his own automobile to work. When traveling by bus, he would arrive at the shop around 7:15 a.m., whereupon he would change his clothes, spend a few minutes talking to fellow employees, and commence work at 8:00 a.m. Were he to take a bus subsequent to the 7:00 a.m. one he would arrive too late to commence work at 8:00 a.m. On the morning of the accident the claimant had utilized the transportation facility of the employer free of charge to himself, as provided in Article Six of the contract of employment mentioned above.
Upon sustaining the injury in the public street outside the company's shop, claimant sought compensation from his employer. Both the employer and its carrier, petitioner here, controverted the claim. A deputy commissioner conducted hearings which established the foregoing facts. On May 3, 1956 he entered his order concluding claimant had sustained an injury, by accident, arising out of and in the course of his employment by petitioner, the Jacksonville Coach Company.
The full commission on October 18, 1956 entered its order affirming the deputy's order.
It is the general rule that the hazards encountered by employees while going to or returning from their regular place of work are not ordinarily incidental to the employment. Hence, an employee injured on such a journey is generally not protected by the Workmen's Compensation Act, F.S.A. § 440.01 et seq. Povia Bros. Farms v. Velez, Fla. 1954, 74 So.2d 103; Blount v. State Road Dept., Fla. 1956, 87 So.2d 507. There are, however, many exceptions to the general rule, as pointed out by this Court in the Blount and Povia cases, supra. We said in the Povia case that one exception is where the "going and coming" journey is made in transportation furnished by the employer as a part of the employment contract.
We must determine here, as in the Povia case, whether or not the provisions of Article Six of the contract of employment between the union and the employer constitute an agreement by the employer to furnish the claimant transportation to and from work so as to bring this case within the abovementioned exception to the "going and coming" rule. If we find that there was such an agreement we then must determine whether the occurrence of the accident was incidental to such transportation.
The deputy commissioner and the full commission both felt that the opinion of *363 this Court in the Povia case controls this case.
In the Povia case this Court, 74 So.2d at page 105, speaking through Mr. Justice Hobson said
"* * * it was established that the transportation was customarily furnished by the employer for those employees who did not have other transportation available, and an understanding existed between employer and employee that the truck would be at the loading point, or in the general loading area, at a reasonably certain time in the morning of a working day."
This Court clearly decided that there was an agreement, express or implied, that the employer would transport the employee to and from work.
Mr. Justice Hobson then reasoned, as did the court in Flanagan v. Webster & Webster, 1928, 107 Conn. 502, 142 A. 201 that the stopping of the truck by the driver thereof was an invitation to the claimant to board the truck at that time and place, given by the driver of the truck in behalf of the employer and that such invitation constituted an order of the employer to the employee to board the truck at the place where it had been stopped.
In the Povia case we held that from the time the employee began to cross the road, in response to the implied order of the driver of the truck, he was engaged in an attempt to fulfill an order of his employer, and that the coverage of the Workmen's Compensation Act commenced from the time he started to cross the road.
It is clear then that this Court in the Povia case first determined that the employee was acting pursuant to an order of the employer, and had submitted himself to the authority and control of the employer under the relationship of employer and employee, before it concluded that the accident was incidental to the transportation of the employee to and from work by the employer.
The most difficult question involved in the Povia case was not whether there was an agreement to transport the employee to and from work, but was where does the outer edge of the cloak of coverage of the act fall in a case such as this.
It is to be noted that this Court restricted the scope of its decision in the Povia case to the particular facts therein by saying, 74 So.2d on page 105
"* * * We do not intend to lay down a broad principle herein, but rather we shall, as we must, restrict the scope of our inquiry and the force of our decision to the peculiar facts of the case before us * * *."
We find little similarity in the facts of the case now before us, as compared to those of the Povia case, or the cases cited therein. Because of the difference in the factual situations the Povia case is not controlling here.
Nowhere in the record of the case before us is there evidence which justifies a conclusion that the employment contemplated the incident of the employee being transported to and from work by the employer.
It is true that the employee could use the buses of the employer to ride from the stop nearest his home to that one nearest the place of employment. Yet the employee's choosing to do this is not sufficient to convert the pertinent portion of the employment contract from an agreement to furnish free transportation into an agreement to transport the employee to and from work. This would add to the contract an obligation on the employer which it does not appear was intended by either the employer or the employee.
Under the facts in this case it appears that the employee was at liberty to utilize the free transportation of the employer or not as he chose to do. He could board and leave the buses of the employer at any time he chose and at any bus stop. The employee even when riding a bus to and from work did not submit himself to the control *364 or orders of the employer any more than did his wife should she use the privilege of free transportation given to her under the contract. If an employee did not live near any of the lines of the employer he had no right under the employment contract to insist that the employer vary its route to pick him up.
The following comments in 1 Larson's Workmen's Compensation Law, Sec. 17.40, well state our view:
"In the ordinary bus or street-car case, it is a little difficult to see on on what basic principle coverage extended to approaching and leaving the conveyance. As mentioned above, the fundamental reason for the conveyance doctrine lies in the fact that, while on the conveyance, the employee is in an employment environment under the employer's control, and the risks of the conveyance are therefore risks of the employment. Perhaps, when the employer undertakes to pick up an employee in his truck it is reasonable to expect him to bring the truck to a point where it can be boarded without extra hazard; and perhaps * * * it can be even said that the employer assumes a contractual obligation to see the employee safely home; but it is quite another matter to read into the simple issuance of a free pass, which can be utilized at any time, the paternalistic sentiments attributed to that gesture by the * * * court, when it enlarged the pass into a complete safe-conduct from the employer's gate, across city streets, throughout the * * * journey and presumably, to the employee's front door."
The case of Dellepiani v. Industrial Accident Comm., 1931, 211 Cal. 430, 295 P. 826 is in point with the case now before us. In the Dellepiani case the claimant employee was furnished free transportation on the street railway operated by the employer. Preparatory to beginning a day's work he boarded one of his employer's cars near his home and rode on it to a car stop across the street from his place of work. He alighted from the car, started across the street, was struck by a passing auto and was killed.
The California court in ruling that the claimant was not covered by the Act distinguished the case from those in which the employer had agreed to transport the employee to and from work. In doing so the court said, 295 P. at page 830:
"* * * The engagement of the employer in this case was to transport the deceased employee to a point along its line nearest his place of employment. Beyond that point and until he reached the premises of his employer, whether that distance was the width of only a part of an ordinary street, or whether it was a block or more, the employee was not under the control, direction, or protection of the employer. He could choose any route of travel, and any means of conveyance that might appear to him to be feasible or desirable to reach the premises of his employer. The latter was without any authority or right to govern or interfere with the movements of the employee during this period of time. Under this state of facts, it cannot be held that the employee had either reached his employer's premises or was being conveyed thereto by his employer * * *."
Similar factual situations and holdings are found in De Voe v. New York State Railways, 1916, 218 N.Y. 318, 113 N.E. 256, L.R.A. 1917A, 250; Ex parte Taylor, 1925, 213 Ala. 282, 104 So. 527; Ogden Transit Co. v. Industrial Comm., 1938, 95 Utah 66, 79 P.2d 17; Lincoln Traction Co. v. Reason, 1943, 143 Neb. 512, 10 N.W.2d 344.
It is true that the Dellepiani case, at the urging of the appellant therein, was considered by this Court in arriving at its decision in the Povia case. However, under the facts of the Povia case it is clear that the holding of the Dellepiani case *365 would not be controlling or applicable there. In the Povia case the only reason for the operation of the truck by the employer, at the time of claimant's injury, was to transport its employees to and from work and it was logical to conclude therefrom that the employer had, either expressly or impliedly, agreed to transport the employee-claimant to and from work. It reasonably followed that the employer had extended his control and direction over the employee to include the journey to and from work, and had simultaneously so extended the coverage of the Act. But as above stated the facts of the instant case are different from those in the Povia case.
Therefore our decision here to follow the reasoning and holding in the Dellepiani and like cases, where in the factual situations are similar to the case now before us, is not inconsistent with our having refused to follow them in the Povia case. Nor is our holding in this case inconsistent with our decision in the Povia case.
We therefore conclude that the employment contract between the employer and claimant did not include, as an incident thereof, an agreement that the employer furnish the claimant with transportation to and from work. The employment contract did not subject the claimant to the control of the employer in his journey to and from work and did not extend the coverage of the act to such journey.
Deciding this case, as we have, on the basis that there was no agreement to transport the employee to and from work we find it unnecessary to consider the distinction involved, if any, because the employer is in the business of public transportation.
We must hold that the order of the Full Commission is error. The writ of certiorari is issued. The order of the Full Commission is quashed with directions that the Full Commission enter an order vacating the order of the Deputy Commissioner and that further proceedings be had in accordance with this opinion.
TERRELL, C.J., and HOBSON, DREW and THORNAL, JJ., concur.