## ATKINSON v. FLORIDA SUGAR CORPORATION.
No. 66-L-531

Circuit Court, Palm Beach County.

February 27, 1967.

Muscarella & Perenich, Clearwater, for plaintiffs.

Sullivan & Anstead, West Palm Beach, for defendant.

JAMES R. KNOTT, Circuit Judge.

*Final summary judgment:* This cause came on before me on the motion for summary judgment filed by the defendant, Florida Sugar Corporation, in each of the above styled cases. The file in each case is identical, and counsel for the parties have stip-

136

ulated that certain depositions filed could be considered by the court in each of the pending cases.

The defendant contends that the plaintiffs in each case, or the plaintiffs' decedents in the death cases, were within the course or scope of their employment with the defendant, Florida Sugar Corporation, at the time of the accident described in the complaints out of which these actions arise. The defendant contends that because Florida Sugar Corporation has afforded workmen's compensation benefits to the plaintiffs, under the Florida Workmen's Compensation Act, in accordance with the provisions of chapter 440.04 (3) of said act, the plaintiffs are barred from maintaining these suits against the employer, by the provisions of chapter 440.11, Florida Statutes.

During the oral argument on these motions, counsel for the parties agreed that there was no genuine issue as to any material fact in connection with this issue, and that the question to be decided by the court is solely one of law. All of the workers injured or killed in the accident described in the complaints were Jamaican nationals, and were temporarily employed in the United States by the Florida Sugar Corporation as a part of the United States Government's "offshore labor" program. Each of the workers had executed a labor contract before leaving Jamaica to come to Florida to work, and a copy of that labor contract is on file in each of the cases. By the terms of the contract, the workers were required to live in a labor camp maintained by the employer, and at the time of the accident each worker was in fact living in a labor camp operated and maintained by the defendant-employer, approximately fifteen miles northeast of Belle Glade. The labor camp was located in an agricultural area, and the nearest stores, shops and places of amusement are located in the city of Belle Glade. There was no public transportation available to these workers, except taxicabs, to transport the workers from the camp to town.

The workers were temporarily in Florida, working for the defendant-employer in the sugar fields during the harvesting season, but on the day that the accident happened the particular workers involved in these cases were not on duty. At the time of the accident, they were on their way from the labor camp to the city of Belle Glade in a "clinic bus" owned and operated by the defendant-employer.

There was no express contract between the workers and the employer as to the employer furnishing transportation from the labor camp to the town, but for many years it had been the

custom of the employer to furnish such transportation, by way of the "clinic bus." Four of the workers, Samuel Williams, Robert Benjamin, Ewart Afflick and Solomon Henry, involved in the accident were on their way to town to visit the company doctor. The other workers were on their way to town to buy food, clothing or other necessaries not available for sale at the camp or which could be bought more cheaply in the town than at the company store.

The question to be decided by the court is whether under the peculiar circumstances of the employment of these particular workers they were within the "course or scope of their employment" at the time of the accident so as to bring them within the purview of the Florida Workmen's Compensation Act, and therefore barred from bringing these suits against their common employer. The files affirmatively show that the employer had procured workmen's compensation insurance through a policy of insurance with American Mutual Liability Insurance Company, and that the compensation insurance carrier has paid certain medical and funeral benefits on behalf of the plaintiffs, and has tendered compensation benefits to each of the plaintiffs.

Each of the workers was temporarily employed by the defendant in a foreign country (the United States), under an employment contract which required them to work for this particular employer and required them to live in quarters furnished by the employer in a relatively isolated area. Two of the workers, Solomon Henry and Ewart Afflick, were on their way to town to see the company doctor for treatment of work connected injuries, and there was a direct connection between the purpose of their trip and the employment. The Florida Workmen's Compensation Act requires the employer to furnish or pay for transportation of an injured employee to and from a doctor for treatment.

The remaining workers were on their way to town to buy the necessities of life which were either not available at the company store maintained at the labor camp, or which necessities could be bought more cheaply in the stores in town, or to visit the company doctor for medical treatment for illnesses not directly caused by their work.

In Carr v. U. S. Sugar Corporation, 136 So. 2d 638, the Supreme Court of Florida held, under almost identical circumstances of employment, that a Jamaican laborer working for U. S. Sugar Corporation was entitled to workmen's compensation benefits and was in the course and scope of his employment when

he fell and was injured while descending the steps of his barracks in a labor camp, while off duty and on his way to visit a friend for social purposes. While the case was decided under the so-called "bunkhouse rule", the rationale of the case is that the injury arose out of and in the course of the claimant's employment, because "the source of the injury was a risk distinctly associated with the conditions under which the claimant lived because of the requirement of remaining on the premises." It is the view of the court in this case that the risk inherent to the trip to town in the employer's "clinic bus" was a risk distinctly associated with the conditions under which the workers were required to live, under the terms of the labor contract.

Larson, *Workmen's Compensation Law,* volume 1, section 1710, page 279, indicates that a vehicle owned and operated by the employer to transport workers to and from work should be considered as a portion of the employer's premises. If the "clinic bus" in this case is in a sense an extension of the employer's premises, then there is no distinction in principle between this case and the *Carr* case, supra.

Since the records show that the employer had furnished this type of transportation to its workers by virtue of longstanding custom and usage, cases such as Lee v. Florida Pine & Cypress, 157 So. 2d 513; Swartzer v. Food Fair Stores, 175 So. 2d 36; and Povia Bros. Farms v. Velez, 74 So. 2d 103, are applicable. The court has considered such cases as Heller Bros. Packing Co. v. Lewis, 20 So. 2d 387; General Development Corporation v. Kelley, 159 So. 2d 471; and Jacksonville Coach Company v. Love, 101 So. 2d 361, but finds the holding of those cases inapplicable to the factual situation revealed by these files.

The court is of the opinion that the issue to be decided here is controlled by a line of cases cited by the federal courts under the Longshoremen's and Harbor Workers' Compensation Act, and another line of cases decided by the courts of New York under its Workmen's Compensation Act. The New York decisions are especially applicable, as the Florida Workmen's Compensation Act was patterned after the New York Act.

The federal cases deal with a variety of factual situations involving workers temporarily employed in foreign countries where the workers lived on the employer's premises in relatively isolated areas. These cases have uniformly held that the workers were in the course of their employment, and entitled to compensation, even though they were off duty and pursuing recreational activities or engaged in personal missions. See O'Leary v. Brown-Pacific-Maxon, Inc., 71 S. Ct. 470, 340 U. S. 504;

Hastorf-Nettles, Inc. v. Pillsbury, 203 F. 2d 641; Self v. Hanson, 305 F. 2d 699; Smith, Hinchman & Grylls Associates, Incorporated v. O'Keeffe, 222 F. 2d 4; and Pan American Airways v. O'Hearne, 335 F. 2d 70.

The Supreme Court of the United States, in the *O'Leary* case, supra, laid down the following rule in regard to the compensability of injuries suffered by this type of worker —

> "The test of recovery is not the causal relation between the nature of the employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the obligations or conditions of employment created the 'zone of special danger' out of which the injury arose."

The New York cases of Rizzo v. Syracuse University, 151 N.Y.S.2d 724; Leonard v. Peoples Camp Corporation, 194 N.Y.S.2d 863; Roher v. Cherry Grove Hotel, 245 N.Y.S.2d 173; Dow v. Collins, 254 N.Y.S.2d 554; and Gabumas v. Pan American Airways, 108 N.Y.S.2d 372, uniformly hold that the injuries suffered by workers who are required by their employment to live in relatively isolated areas, away from their homes, are compensable even when the workers are engaged in personal missions or recreational activities, on the principle that — "the employment status continues during the normal activities of an employee required to travel or sojourn at a distance from his home."

It is the opinion of this court that the injuries suffered by the workers involved in these cases arose out of a "zone of special danger" created by the obligations or conditions of their employment. These workers were required by their contract of employment to live in a labor camp located on the employer's premises, in a relatively isolated agricultural area. Transportation of the workers from the camp to the nearest town to visit the company doctor or purchase necessities was a risk directly associated with the conditions under which the workers were required to live, and the conditions of their employment created the "zone of special danger" out of which their injuries arose.

Accordingly, it is the view of the court that at the time of the occurrence of the accident described in the complaints, the plaintiffs in these cases, or the plaintiffs' decedents in the death cases, were in the course or scope of their employment with the defendant, Florida Sugar Corporation, and that, therefore, the plaintiffs are barred from suing the employer-defendant by the provisions of chapter 440.11, Florida Statutes.

While it is not essential to the court's finding on the issues presented by the defendant's motion, the court observes that the plaintiffs may well be estopped to deny the coverage afforded by the Florida Workmen's Compensation Act by reason of their retention of medical and funeral benefits paid on their behalf by the defendant-employer's workmen's compensation carrier.

Accordingly, it is ordered and adjudged that summary judgment be, and it is hereby entered in favor of the defendant, Florida Sugar Corporation, in each of the above styled cases, letting said defendant go hence without day. The clerk of this court is hereby directed to file a copy of this final summary judgment in each of the above styled cases.