[Civ. No. 12987. First Dist., Div. One. Mar. 1, 1946.]

NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and SARAH F. SKINNER, Respondents.

Lawrence L. Howe for Petitioner.

R. C. McKellips, Edmund J. Holl and Dan Murphy, Jr., for Respondents.

WARD, J.—The petitioner, Northwestern Pacific Railroad Company, seeks to annul an award of an order of the Industrial Accident Commission awarding death benefits to the widow of Eugene N. Skinner, a railroad brakeman, formerly conductor, who died as the result of a collision between an automobile and a taxicab. The brakeman was being transported in a taxicab furnished by the employer railroad company to convey train crews to and from work during hours when public transportation was unavailable.

Whether the deceased was engaged in interstate commerce at the time of his death is the sole question to be decided. The respondent commission concedes as it must that if the employee was engaged at the time of his injury in interstate transportation or in work so closely related to it as to be

practically a part of it, the respondent commission would be without jurisdiction. (See Lab. Code, § 3203.)

At the hearing one of the issues was whether the injury arose out of and in the course of the deceased's employment. The commission found "Said transportation was furnished to the employee by the employer as part of the contract of hire and was under the control of the employer, and therefore while using it said employee was performing a service in the course of his employment, and said injury arose out of and in the course of the employment." The finding was made pursuant to the general rule that if an employer furnishes transportation under the control of the employer, to an employee, not as an independent act of courtesy, but as an actual incident appertaining to the employment, and an injury is sustained during the transportation, such injury arises out of and is in the course of the employment. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 461 [132 P.2d 815]; *Smith* v. *Industrial Acc. Com.*, 18 Cal.2d 843 [118 P.2d 6]; *Trussless Roof Co.* v. *Industrial Acc. Com.*, 119 Cal.App. 91 [6 P.2d 254]; *Boggess* v. *Industrial Acc. Com.*, 176 Cal. 534 [169 P. 75, L.R.A. 1918F 883]; *Dellepiani* v. *Industrial Acc. Com.*, 211 Cal. 430 [295 P. 826].) The federal courts in determining whether an injury arises out of and in the course of interstate employment apply the same rule. (*Atlantic Coast Line R. Co.* v. *Williams*, 284 F. 262; *Sassaman* v. *Pennsylvania R. Co.*, 144 F.2d 950, 953; *Marceau* v. *Great Lakes Transit Corporation*, 146 F.2d 416, 418.)

The commission found that "both employer and employee were subject to the provisions of the Workmen's Compensation, Insurance and Safety Laws of California." The deceased had worked for approximately four years as a brakeman or conductor. The last train operated on which decedent was a member of the crew contained, among other cars, interstate commerce cars. The referee reported: "There can be no question that as long as the employee was on active duty on Train 2973, that is from the time it left Willits to the time it was registered and cleared at Tiburon, he was rendering a service in interstate commerce, for the two jurisdictional conditions precedent would have been present, namely, a common carrier by rail engaged in interstate commerce and an employee performing a service in such commerce. (45 U.S.C.A. Secs. 51 and 54.)" However, the referee concluded that the "Interstate character of service terminated when train was

registered and cleared at terminal, and thereafter employee and employer were subject to the provisions of the State Compensation Laws.'' The last quoted statement is the foundation for the determination of the jurisdiction of the state commission upon the sole issue presented—the character of decedent's work.

Preliminarily it should be noted that this court in *King* v. *Schumacher*, 32 Cal.App.2d 172, 177 [89 P.2d 466], said: ''It is well settled that by the Federal Employers' Liability Act Congress took possession of the field of employers' liability in interstate transportation by rail, and that the rights and obligations of persons within its provisions depend upon the act and applicable legal principles as interpreted by the federal courts.'' ▮ In situations in which the Federal Employers' Liability Act is applicable, Congress is deemed to have intended its applicability to be exclusive of all state and local workmen's compensation laws. In *Southern Pac. Co.* v. *Industrial Acc. Com.* (*Mistretti*), 19 Cal.2d 271 [120 P.2d 880], an employee was repairing a mechanical instrument used to clear tracks on which the petitioner company engaged in interstate commerce. It was held that the repairer was performing a duty in furtherance of interstate commerce and was not subject ''to the Workmen's Compensation Laws of the State of California.'' In *Southern Pac. Co.* v. *Industrial Acc. Com.* (*Rodgers*), 19 Cal.2d 281 [120 P.2d 887], where it was part of decedent's duties to switch and break up trains in both intrastate and interstate commerce, it was held that an award of the state industrial accident commission should be annulled, the Federal Employers' Liability Act being the exclusive remedy. In *Southern Pac. Co.* v. *Industrial Acc. Com.* (*Wills*), 19 Cal. 2d 283, 284 [120 P.2d 888], the court said: ''The duties performed by Wills in the repair of cars devoted to general freight service were in furtherance of interstate commerce in a way which directly, or closely and substantially, affected that commerce. It follows that the respondent commission was without jurisdiction to make the award.'' In *Lewis* v. *Industrial Acc. Com.*, 19 Cal.2d 284, 286 [120 P.2d 886], the court said: ''In any event, petitioner's duty as a member of the switching crew of an interstate railroad seems to us to affect interstate commerce directly or closely and substantially, even though at the moment of his injury he was not engaged in the movement of interstate traffic.'' In *Copley* v. *Industrial Acc. Com.*, 19 Cal.2d 287 [120 P.2d 879], in the case of a bridge carpenter working on a trestle used by interstate and intrastate com-

merce, the court said (p. 288): "If the federal remedy is inadequate, those subject to its exclusive control cannot alter their status by virtue of that fact but should address such complaints to Congress. Since the decedent was performing duties which have a direct relation to interstate commerce, the Industrial Accident Commission was without jurisdiction to proceed in the case."

■ The present accident, the foundation for the state commission's award, occurred in 1936. The respondent commission urges that at that date the jurisdiction of the Federal Employers' Liability Act was limited to those acts which "at the moment of injury" were so closely related to interstate transportation as to be a part thereof; and consequently, here, the deceased employee was not within the jurisdiction of the act as he had ceased his interstate work for the day. The factual situation to which the "moment of injury" test was intended to be applied, relied on by the respondent commission, and the factual situation to which the enlarged scope of the act subsequent to 1939 was intended to be applied, are different from the factual situation here. The borderline cases "in the twilight zone" which made necessary the "moment of injury" test and the 1939 amendment were inherent in the nature of railroad operations which are in part interstate and part intrastate, one employee being called upon to perform services in both. (*Shanks* v. *Delaware L. & W. R. R. Co.*, 239 U.S. 556 [36 S.Ct. 188, 60 L.Ed. 436]; *Knowles* v. *New York, N. H. & H. R. Co.* (Ct. of App., N.Y.), 223 N.Y. 513 [119 N.E. 1023].) Here it is conceded that the services performed by the applicant all during the day terminating in his death, were in interstate commerce. Therefore, the reason for the "moment of injury" rule is inapplicable. ■ In the present case there were no available lodging accommodations at the terminal of the railroad. Some eighteen years prior to the accident the Trainmen's Brotherhoods and the president of the petitioner railroad, or its predecessor, entered into an agreement that transportation from the terminal to a designated point would be provided by the company "at hours when public transportation facilities" were not available. On the day of the accident decedent arrived at the terminal about 1 a. m., when public transportation was not available. The employer-employee relationship in engaging in interstate commerce did not end until the employer fulfilled his contract by transporting the employee to a point where public transportation could

be obtained. Such transportation was an incident of, arose out of and occurred in the course of employment in interstate commerce railroad work.

If liability for accidents occurring while the employer transports his employees to and from work is imposed by reason of such transportation's being an incident to the employment, though no services are being performed at the moment of the accident, jurisdiction over the liability, logically, should be governed by the character and purpose of the services which have been performed. The basic principle to be applied to the present facts was enunciated in *Erie R. R. Co.* v. *Winfield* (decided in 1917), 244 U.S. 170 [37 S.Ct. 556, 61 L.Ed. 1057], wherein at page 173 the court stated the rule as follows: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. See *North Carolina R. R. Co.* v. *Zachery,* 232 U.S. 248, 260 [34 S.Ct. 305, 58 L.Ed. 591]. Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance." In *St. Louis-San Francisco Ry. Co.* v. *Mills,* 3 F.2d 882, the Circuit Court of Appeals held that employment in interstate commerce could continue during a ride from work in a streetcar not under the control of the employer and not the only means of transportation. As part of the contract of employment, the employer undertook to guard the employee from injury from strikers going to and from work. The case was reversed on other grounds in 271 U.S. 344 [46 St.Ct. 520, 70 L.Ed. 979, 983], where the court said: "We need not inquire whether decedent was employed in interstate commerce at the time of his death, or whether the rule laid down in *Erie R. Co.* v. *Winfield,* 244 U.S. 170, 61 L.Ed. 1057, 37 S.Ct. 556, Ann.Cas. 1918B, 662, 14 N.C.C.A. 957, can be extended, as the court below held, so as to support the judgment of the District Court."

The respondent commission relies on a group of cases exemplified by *Milburn* v. *Chicago, M., St. P. & P. R. Co.,* 331 Mo. 1171 [56 S.W.2d 80]. In that case an employee of a railroad

lived in a bunkhouse near his place of work which was supplied by the railroad. His work consisted of repairing tracks, the bunkhouses being moved with the jobs. He was injured when a kerosene stove exploded as he lighted it. The injury occurred long after he had returned from his day's work in interstate commerce but while he was required by his job to be in the bunkhouse on call for emergencies. The court in its decision (p. 87 [56 S.W.2d]) recognized the rule in the Winfield case: "As shown above, an employee after he has stopped his actual work is under the protection of the federal act for a reasonable time in which to leave the railroad premises, and under the authorities above quoted this includes, if necessary, taking him to a place where he can conveniently reach his lodgings." However, in the case before the court it was held that the employee's "actual employment [then, at the time of injury] was holding himself ready . . . to respond to a call for service." The court seems to segregate this type situation into a series of acts in employment which do not partake of the character of the acts preceding or succeeding. (See *Arkell* v. *Baltimore & O. R. Co.* (Mo.), 131 S.W.2d 590, for this distinction.)

The commission attempts to distinguish the cases following the Winfield case on their facts, stating that in all of them the employee was injured on the premises of the employer. (e. g. *New York, C. R. Co.* v. *Marcone*, 281 U.S.345 [50 S.Ct. 294, 74 L.Ed. 892] ; *Williams* v. *Chicago, R. I. & P. Ry. Co.*, 155 Kan. 813 [130 P.2d 596].) The fact that the transportation furnished to and from work is on the railroad line or under the control of the employer has no bearing upon the interstate character of the employment relationship at that point in time if in fact the transportation is a necessary incident of the day's work such as to make an injury occurring at that time one which arises out of and in the course of the employment. (*Lopez* v. *Hines* (Mo.), 254 S.W. 37, 41, and *Louisville & N. R. Co.* v. *Mullins' Adm'x*, 181 Ky. 148 [203 S.W. 1058, 1059], are both cases in which the railroad furnished the employee with hand cars to go to and from work on the railroad line and the principle of the Winfield case was applied.

One California case is cited by the commission to support its position: *McKinney* v. *Industrial Acc. Com.*, 137 Cal.App. 206 [30 P.2d 78]. (No petition for hearing in the Supreme Court.) McKinney, the husband of petitioner, in the employ

of the Southern Pacific Company was employed to inspect and repair electrical equipment of locomotives in the roundhouse. On his way to work through the roundhouse he fell into a pit. An order of denial of award by the Industrial Accident Commission was annulled for the reason that (p. 208) : ''In the present case, however, while decedent was subject to be employed in both interstate and intrastate commerce, he had not been assigned to work in either.'' Here it is admitted that the employee was employed only in interstate commerce on the day of his injury.

It must be admitted that some confusion appears in various jurisdictions. The commission argues that this confusion can be explained on the basis that the appellate courts support the first fact finding tribunal, whether the district court or the state compensation commission, i. e., their finding of jurisdiction will be supported because both systems, federal and state, of compensation are to be liberally construed in favor of the workman. A careful examination of the seeming conflict in the various jurisdictions and in the respective positions of the commission and petitioner with respect to the issue now being considered indicates that the confusion results from the fact that the courts ''in discussing the status of particular employees, frequently are somewhat elliptical in stating their conclusions, omitting reference to 'course of employment,' although deciding the question of 'employment in interstate commerce' upon that very basis.'' (Roberts, Federal Liabilities of Carriers, vol, 2, p. 1391; see, also, *Sassaman* v. *Pennsylvania R. Co., supra.*) Further in support of its position the commission cites *Davis* v. *Department of Labor & Industries,* 317 U.S. 249 [63 S.Ct. 225, 87 L.Ed. 246]. In that case the court seems to hold that though, where Congress has acted in the maritime or interstate commerce fields, its jurisdiction is exclusive, ''There is . . . clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. . . . Faced with this factual problem we must give great—indeed, presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves.'' (P. 250, L.Ed.) There is no basis on which to apply this rule to the facts here. There is no question of fact to be decided. The applicant was employed actively in interstate commerce. There is no confusion of employers and employees operating both in intrastate and interstate com-

merce. If the employee's injury arose out of and in the course of his employment as a necessary incident thereto, it arose out of and in the course of interstate commerce, it being conceded that his day's active duties were in interstate commerce. The basic reason for the rule of exclusive jurisdiction of the federal law is present. The application of the state law would disturb the uniform application of the Federal Employers' Liability Act. (*Occidental Ind. Co.* v. *Industrial Acc. Com.*, 24 Cal.2d 310, 315 [149 P.2d 841]; *Clark* v. *Cahill Bros.*, 67 Cal.App.2d 689, 693 [155 P.2d 125].) There is no "twilight zone" of interstate and intrastate activities upon which conflicting findings of fact might be based. It is settled law that intrastate business is relegated to state tribunals to settle contested questions; that Congress had made clear that the state must refrain from attempting jurisdiction in matters that bear an exclusively interstate aspect; and that state courts in matters presenting questional jurisdictional issues should be guided by the federal legislative and judicial views.

In *Occidental Ind. Co.* v. *Industrial Acc. Com.* (*Ruljanovich*), 24 Cal.2d 310 [149 P.2d 841], *Davis* v. *Department of Labor & Industries, supra,* and *Southern Pacific Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086], which initiated the "perplexing problem" in the Davis case (87 L.Ed. 248), are discussed at length. In the Occidental Ind. Co. case, Ruljanovich, a seaman fisherman, was injured on shore while performing an errand for his employer. It was held that the maritime law is exclusive. In likening the jurisdictional problem of a seaman's obtaining damages (Jones Act, 46 U.S.C.A., § 688) or his maintenance and cure under admiralty law to the same problem under the Federal Employers' Liability Act (45 U.S.C.A., § 51-60), the court said (p. 315): "In other fields, for illustration, injury to railway employees, it has been consistently held that the remedy given by the Federal Employers' Liability Act (45 U.S.C.A., §§ 51-60) is exclusive of rights and remedies under state workmen's compensation laws; that act extends to all railway employees, as expressed in its 1939 amendment. . . .

"From the foregoing it remains to be determined whether the facts of the instant case bring the employee within the exclusive jurisdiction of the maritime law or the state Workmen's Compensation Law or in the twilight zone mentioned in *Davis* v. *Department of Labor, supra*; and in so doing we are not aided by the discussion in the Davis case of the *pre-*

*sumption* of the correctness of a determination by the state Industrial Accident Commission that it had jurisdiction inasmuch as both it and the federal court have assumed jurisdiction.'' (Italics added.) The court concluded (p. 323) ''that the respondent commission did not have jurisdiction of the case a't bar and therefore its award is annulled.''

In the record before us it appears that the applicant commenced a suit under the Federal Employers' Liability Act, but it does not appear what happened to that suit, hence the force of the Davis case has not been dispelled as in the Occidental Ind. Co. case by the assumption of jurisdiction under the federal act by the federal court. However, the facts in the instant case do not present the ''perplexing problem'' of alternating territorial jurisdiction of activity on land and sea or alternating commerce jurisdiction of activity in interstate and intrastate commerce. For this reason the assumption of jurisdiction by the state tribunal is not aided by the ''presumption'' in the Davis case.

To summarize: Irrespective of the 1939 amendment, which is referred to herein as indicative of recent legislative thought, the order of the commission must be annulled. The decedent brakeman was riding in the taxicab as an incident of his interstate work. An incident of employment derives its character from the work performed in the occupation. Without the designated principal work there would be no ''incident'' to the ''employment.'' Prior to the 1939 amendment, section 1 of the act (45 U.S.C.A., § 51) provided that every common carrier by railroad while engaging in commerce between any of the several states should be liable in damages to an injured employee while employed by such carrier in such commerce. The employment here wás in interstate commerce. The Federal Employers' Liability Act therefore for the reasons stated as in *Occidental Ind. Co.* v. *Industrial Acc. Com., supra* (p. 314) ''Supersedes the operation of state workmen's compensation laws.'' The purpose of the 1939 amendment was to eliminate the necessity of the courts determining borderline cases. This is not a borderline case. It is conceded that if the transportation was connected with the work so closely as to be an incident of interstate commerce, respondent commission is without jurisdiction. The working hours of decedent and the conditions at the terminal at Tiburon required a continuance of his interstate employment until the taxicab should have transported him to a place where a public conveyance could be obtained. Any disputed legal point raised in this case may

be settled by reference to federal decisions which must prevail over state opinion. (*New York C. R. Co.* v. *Marcone, supra; San Pedro, L. A. & S. L. R. Co.* v. *Davide,* 210 F. 870 [127 C.C.A. 454]; *St. Louis-San Francisco Ry. Co.* v. *Mills, supra; Atlantic Coast Line R. Co.* v. *Williams, supra; Lukon* v. *Pennsylvania R. Co.,* 131 F.2d 327; *Chicago, M., St. P. & P. R. Co.* v. *Kane,* 33 F.2d 866; *North Carolina R. Co.* v. *Zachery, supra; Erie R. R. Co.* v. *Winfield, supra.*) A movement toward home in transportation supplied by the employer is a necessary incident to the commerce in which the employee has last been engaged. (*Director General of Railroads* v. *Bennett,* 268 F. 767 (certiorari denied), 254 U.S. 656 [41 S.Ct. 218], 65 L.Ed. 460].) If the deceased had been engaged in intrastate and interstate work during the day or night preceding his death, the intrastate work would be of no importance. (*Dennison* v. *Payne, Agent, etc.,* 293 F. 333; *Erie R. R. Co.* v. *Winfield, supra.*)

The order is annulled.

Peters, P. J., and Schottky, J. pro tem., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 29, 1946.