BROWN v. UNION PAC. R. CO.

No. 7520.   Decided September 11, 1951.   (235 P. 2d 506.)

See 57 C. J. S., Master and Servant, sec. 531. Federal employers' liability act, calamities within purview of. 35 Am. Jur., Master and Servant, secs. 422 et seq.; 10 A. L. R. 2d 1279.

Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray and D. A. Alsup, Salt Lake City, for appellant.

Rawlings, Wallace, Black, Roberts & Black, Wayne L. Black and Ray S. McCarty, Salt Lake City, for respondents.

WADE, Justice.

Benjamin W. Brown brought this suit against the Union Pacific Railroad Company, his employer, under the provisions of the Federal Employers' Liability Act, § 1, 45 U. S. C. A. § 51, for personal injuries he alleged he sustained during the course of his employment. From a jury verdict and judgment thereon in his favor, the railroad company appeals. Hereafter, we shall refer to Brown as the respondent and the Union Pacific Railroad Company as the appellant.

On May 20, 1949 and for a number of years prior thereto, respondent had been employed by appellant as a water service mechanic. On that day he was injured while riding in the car of a fellow employee who was driving to West Yellowstone, which was the next place at which they were to work. The appellant's work necessitated his traveling

from place to place wherever his type of work was needed. In reaching the various destinations to which they were assigned to work, the employees traveled by train, bus or private automobile. The appellant had acquired a truck about six months before the accident and since the acquisition the use of private automobiles was less frequent. No matter which mode of traveling was used by the employees while traveling between jobs, they were paid for the time of travel, their regular wages and incidental expenses such as meals and hotel bills, if any.

Under the provisions of the Federal Employers' Liability Act, § 1, 45 U. S. C. A. § 51, every common carrier by railroad is liable in damages for injuries to a person while employed by the carrier in its commerce where the injury is due in whole or in part to negligence of the carrier. It is appellant's contention that whether respondent was employed in its commerce at the time of the accident under the evidence presented in this case was a question of fact for the jury to determine and the court erred in instructing the jury as a matter of law that respondent was injured while he was engaged in the course of his employment.

The record discloses that on the morning of May 20, 1949, respondent was in Ashton, Idaho with a work gang which was to proceed to West Yellowstone on a train. This train had no definite schedule to West Yellowstone and therefore at 8 o'clock that morning the foreman assigned the gang to work at various jobs until the train should leave. Respondent, along with a workman named Wright, was assigned work in the installation of a pipeline into property belonging to appellant which was located about half a mile from the depot. The foreman of the crew thought the train would be leaving for West Yellowstone about 10:30 o'clock that morning. The foreman knew that Wright had brought his car and intended to drive in it to West Yellowstone. Some time before the train left, the foreman learned from the man who was to install the pipe that the work Wright

and respondent were doing was nearly finished and that man as defendant's witness testified that in accordance with the foreman's instructions he told them to stay and help finish the work and eat their lunch there. Lunch time was usually 12 o'clock. The foreman on being asked on cross exacination whether he had sent a message that they were to complete their job digging and then to go over in Wright's car ignored the first part of the question and only denied that he had said to the messenger that Brown was to go in Wright's car. Pursuant to the message given them, Wright and respondent worked until about 11:35, at which time the train had already left. With the train gone, the only means of transportation to West Yellowstone remaining for respondent was to travel in Wright's car.

After leaving their work, respondent and Wright went into the town of Ashton where they had a few drinks before eating lunch. After they had eaten, they bought a fifth of whiskey to take along with them on the trip. About 1 o'clock, they left Ashton via Highway 191, the road leading to West Yellowstone, in Wright's car with Wright driving. Wright's car was an old model Chevrolet coupe. After traveling a short distance, it was necessary to stop and make a minor repair. They also stopped a few more times to purchase gasoline and casite and to eat some refreshments and to take a little side trip to view some scenery. Highway 191 was in very poor condition, being rough and full of large chuckholes and ruts. During the ride, some drinks were taken from the bottle of whiskey purchased in Ashton by both respondent and Wright. Shortly before 4 o'clock, it had begun to rain. About 4 o'clock, after having traveled about 40 miles from Ashton, Wright's car collided with another car which had just come around a curve from the opposite direction in which Wright's car was traveling. Respondent was seriously injured in this accident.

Appellant argues that it was at least a question of fact for the jury to determine whether respondent was in the course of his employment when he was injured because the

jury could have found from the evidence we have outlined above that respondent was not authorized to travel from one job to another in Wright's automobile on this particular occasion but had been ordered to proceed by train and that furthermore respondent had by his conduct departed from his employment even if he had been authorized to travel by car and therefore the court erred in its instruction No. 10 wherein it told the jury that:

"You are instructed that merely because an employee violates a rule of his employer, his employment and the relationship of employer and employee is not thereby terminated.

"Therefore, in the present case the fact that the plaintiff drank intoxicating liquor or became under the influence of such liquor would not terminate his employment, and since at the time of the collision he was traveling from one job to another he would be in the course and scope of his employment.

"The fact that plaintiff was drinking intoxicating liquor or became under the influence thereof could only be considered by you in determining whether or not the plaintiff was guilty of contributory negligence which contributed to cause his injuries."

Appellant's contention that a jury could reasonably find that respondent was not injured while in the course of his employment because he had been ordered on this particular occasion to proceed by train is not sustained by the evidence. The record discloses that it was customary for the men to travel from job to job either by train, bus or private automobile and regardless what mode of travel is used they are paid their travel time at the same rate they are paid for their working hours. The record also discloses that it was also the custom to leave a man or two, if necessary, to finish the job while the rest of the gang went on to another job. Under such a state of facts, even though the foreman's testimony was true that he had told respondent to work until the train left and then proceed to West Yellowstone by train, still respondent had a right to rely on the message of a fellow workman that the foreman had changed his orders and desired him to remain on

the job until noontime and eat his lunch in Ashton. When respondent complied with this new order, it left only one other means of transportation and that was to ride with Wright in his car. Thus, while he was traveling enroute to West Yellowstone and even when they stopped to make necessary repairs or eat refreshments, respondent would have been within the course of his employment, if by his conduct on this trip he had not departed therefrom. See *Virginia Ry. Co.* v. *Early,* 4 Cir., 130 F. 2d 548; *Northwestern Pac. R. Co.* v. *Ind. Acc. Comm.,* 73 Cal. App. 2d 367, 166 P 2d 334, and *Glover* v. *Union Pac. R. Co.,* D. C., 21 F. Supp. 618.

Appellant contends that respondent's conduct in drinking intoxicating liquor while enroute and consuming a great deal of time as well as liquor in traveling a short distance presents a question for a jury to determine whether respondent had departed from his employment to go on a frolic of his own.

Respondent having reported for duty at 8 a. m. on the day of the accident would ordinarily have been expected to work until 5 o'clock in the afternoon. Ashton, Idaho is about 75 miles from West Yellowstone. Since Wright and respondent left Ashton about 1 o'clock in the afternoon, it could reasonably be expected that they could travel the distance in sufficient time to do some work that day at West Yellowstone. The work train which had left Ashton at about 11 o'clock that morning had arrived in West Yellowstone at 3 o'clock that afternoon. True, the road was very rough and the car in which they traveled was old and in need of frequent repairs, and if respondent's own testimony had not revealed that he and Wright had jointly purchased a fifth of whiskey so that they could have some drinks on the road, the mere fact that it took them about three hours to travel only 35 or 40 miles under the conditions disclosed might not be sufficient to present any questions as to a departure from their employment. However, that fact in conjunction with the fact that by respon-

dent's own admissions they had consumed at least five or six drinks since the time they stopped working in Ashton tends to make it questionable whether even though they were on the road to West Yellowstone and apparently traveling in the course of their employment, they had yet departed from their employment because a jury might be able to reasonably find that even if respondent had arrived in time to do further work that his drinking had incapacitated him to do any substantial portion of the work required by his job. Had respondent gone on the worktrain and while traveling to West Yellowstone consumed so many drinks that when he arrived he would have been found to be incapable of performing any labor, there could be no doubt that he would have departed from his employment. Although intoxication of an employee will not in every instance amount to an abandonment of, or take that employee out of the course of his employment, even though in so doing the employee violates a rule of his employer, yet whether the employee's intoxication does have that effect is a factual question depending upon the circumstances and to be determined by a trier of facts. See *Hopwood* v. *City of Pittsburg*, 152 Pa. Super. 398, 33 A. 2d 658; *C. F. Lytle Co.* v. *Whipple*, 9 Cir., 156 F. 2d 155, and *Phillips* v. *Air Reduction Sales Co.*, 337 Mo. 587, 85 S. W. 2d 551. It follows from what we have said that the court erred in instructing the jury as a matter of law that even if respondent was under the influence of liquor, since he was traveling from one job to another when the accident occurred, he would still be in the course of his employment. That question under the facts and circumstances disclosed by the record should have been left to the jury. The failure to do so was prejudicial error.

Reversed with directions to grant a new trial. Costs to appellants.

WOLFE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., not participating.