[No. B003938. Second Dist., Div. Five. Mar. 28, 1985.]

ALBA MUNGO et al., Plaintiffs and Appellants, v.
UTA FRENCH AIRLINES et al., Defendants and Respondents.

**COUNSEL**

Fred L. Wright for Plaintiffs and Appellants.

Edward L. Le Berthon, James Allen, Harvey L. Goldhammer and Mihaly, Schuyler & Burton for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—Appellants Alba Mungo, Elie Atallah and Ferdinand Wessel challenge the partial dismissal of their lawsuit against respondents, their

former employer UTA French Airlines and its corporate officer, Michel Taillard. ■■ ■■■■ They also appeal an order that their counsel pay $500 to counsel for respondents.[1]

All three appellants were employed as sales representatives by respondent airline. They were not union members, nor were they subject to a collective bargaining agreement. Appellants were discharged on November 15, 1979. Their suit alleged that they were discharged without cause and in breach of respondents' promise not to discharge them without good cause. Mungo and Wessel brought an additional cause of action under California Labor Code section 1050.[2] On the grounds that labor disputes between carriers and employees are governed by the Railway Labor Act (RLA), and that the RLA preempts state jurisdiction, the trial court found that it lacked subject matter jurisdiction over the wrongful discharge causes of action.

## DISCUSSION

The RLA,[3] 45 United States Code section 153 First (i), "provides that 'disputes between an employee . . . and a carrier . . . growing out of grievances or out of the interpretation or application of agreements' are to be handled by the Adjustment Board." (*Gunther* v. *San Diego & A. E. R. Co.* (1965) 382 U.S. 257, 260-261 [15 L.Ed.2d 308, 311, 86 S.Ct. 368].) ■ Appellants contend that adjustment boards do not have jurisdiction over their wrongful discharge disputes because as respondents' employees they were not parties to a collective bargaining agreement. We agree.

The congressional purpose in enacting the RLA was to promote stability in labor-management relations in the affected industries "by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. [Citations.]" (*Union Pacific R. Co.* v. *Sheehan* (1978) 439 U.S. 89, 94 [58 L.Ed.2d 354, 359, 99 S.Ct. 399]. Accord, *Elgin, J. & E. R. Co.* v. *Burley*

---

[1]An order imposing sanctions on a party's attorney is appealable as a final order on a collateral matter. (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942]; *In re Marriage of Gumalbao* (1984) 150 Cal.App.3d 572, 574-575, fn. 2 [198 Cal.Rptr. 90].)

[2]"Any person . . . who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." (Lab. Code, § 1050.)

[3]The Railway Labor Act is made applicable to the airline industry by 45 United States Code sections 181-187. (*Machinists* v. *Central Airlines* (1963) 372 U.S. 682, 685-689 [10 L.Ed.2d 67, 70-73, 83 S.Ct. 956]; *Intern. Ass'n of Machs., etc.* v. *Northwest Airlines* (3d Cir. 1982) 673 F.2d 700, 705.)

(1945) 325 U.S. 711, 722-728 [89 L.Ed. 1886, 1894-1897, 65 S.Ct. 1282].) Under 45 United States Code section 184, the parties to a collective bargaining agreement in the airline industry are required to establish a board of adjustment to resolve grievances. (*Intern. Ass'n of Machs., etc.* v. *Northwest Airlines, supra,* 673 F.2d 700, 705.) The adjustment boards' "express statutory authority is to hear grievances between employees and their employers arising out of the collective bargaining agreement." (*Brady* v. *Trans World Airlines Inc.* (3d Cir. 1968) 401 F.2d 87, 93, cert. den. 393 U.S. 1048 [21 L.Ed.2d 691, 89 S.Ct. 680]; *Koloedey* v. *Mutual Beneficial Ass'n, etc.* (D.Del. 1981) 526 F.Supp. 1158, 1159.) (See *Stepanischen* v. *Merchants Despatch Transp. Corp.* (1st Cir. 1983) 722 F.2d 922, 932, fn. 3; *Burke* v. *Compania Mexicana De Aviacion, S.A.* (9th Cir. 1970) 433 F.2d 1031, 1032.) Following the rule that state courts should be guided by federal legislation and case law in matters presenting jurisdictional issues (*Northwestern etc. R. Co.* v. *Ind. Acc. Com.* (1946) 73 Cal.App.2d 367, 375 [166 Cal.Rptr. 334]), we apply this federal case authority to the case before this court. It is clear that adjustment boards have no jurisdiction over disputes which do not arise out of a collective bargaining agreement.[4]

That, however, does not entirely resolve the question of whether the trial court properly dismissed the wrongful discharge causes of action. Respondents contend that even if arbitration through an adjustment board was not available to appellants, they should have sued respondents in federal court. Respondents mistakenly rely on a line of cases which implies a private right of action from the RLA in favor of employees discharged for union-organizing activities. Because the right of action in those cases was found to arise from the federal legislation, the federal courts had jurisdiction pursuant to 28 United States Code section 1331.[5] ▪ By contrast appellants assert a right of action based in California contract and tort law. Appellants seek no damages for violations of the RLA, or any other federal law. Therefore, there is no basis for federal jurisdiction.

Appellants also challenge the trial court's ruling that the RLA preempts state court jurisdiction. ▪ In settling a question of preemption "[t]he crucial inquiry is whether the exercise of the state authority 'frustrate[s] effective implementation of [an] Act's processes.'" (*New York Tel. Co.* v. *New York Labor Dept.* (1979) 440 U.S. 519, 550 [59 L.Ed.2d 553, 574,

---

[4]Appellants also maintain that the national mediation board does not have jurisdiction over their suit. Created by section 152 Ninth of the RLA to resolve representational disputes, it is evident that the mediation board has no jurisdiction over this wrongful discharge suit.

[5]The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. (28 U.S.C. § 1331.)

99 S.Ct. 1328] [Blackmun, J., conc.], as quoted in *Garibaldi* v. *Lucky Food Stores, Inc.* (9th Cir. 1984) 726 F.2d 1367, 1372.) "[I]nflexible application of the [preemption] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." (*Farmer* v. *Carpenters* (1977) 430 U.S. 290, 302 [51 L.Ed.2d 338, 351, 97 S.Ct. 1056].) The party claiming preemption has the burden of proving it, because courts are reluctant to infer preemption. (*Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548 [208 Cal.Rptr. 874, 691 P.2d 630], citing *Exxon Corp.* v. *Governor of Maryland* (1978) 437 U.S. 117, 132 [57 L.Ed.2d 91, 104, 98 S.Ct. 2207], and *New York Dept. of Social Services* v. *Dublino* (1973) 413 U.S. 405, 413 [37 L.Ed.2d 688, 695, 93 S.Ct. 2507].) Respondents have not established preemption.

The RLA does not address the adjudication of disputes between employers and employees who are not in a collective bargaining unit. The RLA makes no mention of individual employees like appellants herein. The processes created by the RLA to settle labor disputes have never been used to settle noncollective bargaining, nonunion problems. Therefore, it cannot be that California's interest in appellants' allegedly wrongful termination unduly interferes with the federal scheme. ■ Since the RLA does not regulate relations between carriers and nonunion, noncollective bargaining employees, we find that the RLA does not bar a state court from adjudicating a dispute between a carrier and its nonunion, noncollective bargaining employees. The dismissal of appellants' wrongful discharge causes of action for lack of subject matter jurisdiction was error.

■ Appellants' final contention is that the trial court abused its discretion by imposing a $500 sanction on their attorney pursuant to Code of Civil Procedure section 128.5.[6] The facts leading up to the sanction are as follows: Appellants brought this suit in April 1980. In August 1981 trial was set for February 22, 1983. At the mandatory settlement conference on February 16, 1983, appellants requested to have the matter taken off calendar or continued. The request was denied. Appellants' counsel then declared readiness for trial on the 22d, knowing that the defense would incur great expense in preparing for trial because witnesses had to be brought in from various places around the world. In fact, between the afternoon of the 16th

---

[6]Code of Civil Procedure section 128.5, subdivision (a), provides, in pertinent part: "Every trial court shall have the power to order a . . . party's attorney . . . to pay any reasonable expenses . . . incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay."

and the day of trial, respondents spent $12,758 on trial preparation. On the day of trial appellants requested the court to trail the case for seven days because their key witness was in Tahiti and could not be reached. The request was denied. Appellants' counsel was permitted one hour to try to reach the witness. That attempt was unsuccessful, and appellants then dismissed the remaining causes of action against respondents. On March 31, 1983, upon respondents' motion, sanctions of $500 were awarded against appellants' counsel.

■ Code of Civil Procedure section 128.5 "has greatly expanded the powers of trial courts to award attorneys fees for the purpose of discouraging frivolous litigation. . . . The Legislature clearly expressed an intent to broaden the power of trial courts to award monetary sanctions . . . ." (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 537 [183 Cal.Rptr. 86, 645 P.2d 137], cert. granted, vacated and remanded 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], reaffirmed and reissued (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072].) ■ "A trial court is empowered to exercise its supervisory power in such a manner as to provide for the orderly conduct of the court's business and to 'guard against inept procedures and unnecessary indulgences which would tend to hinder, hamper or delay the conduct and dispatch of its proceedings.'" (*Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 648-649 [192 Cal.Rptr. 57], quoting *People* v. *Mattson* (1959) 51 Cal.2d 777, 792 [336 P.2d 937].) An attorney has an obligation to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 647 [183 Cal.Rptr. 508, 646 P.2d 179].)

■ Appellants' counsel's tactic of declaring preparedness for trial, then dismissing the suit six days later, under the circumstances of this case, justified the award of sanctions by the trial court. Counsel had a year-and-a-half notice of the date of trial and should have been able to arrange to have its witness ready to appear on that date. The witness had not even been subpoenaed. Certainly the attorney appearing at the settlement conference on February 16 should have known whether or not that key witness was going to testify less than a week later. Appellants' counsel knew that the defense was planning to spend thousands of dollars to be ready on the calendared date. Counsel had the responsibility not to lead the court and opposing counsel to believe that there would be a trial on February 22 knowing that the key witness was not even in the country and had not been contacted even up to the hour of trial. These facts indicate bad faith. It was frivolous to claim on the 16th that appellants were ready to go to trial on the 22d. We find no abuse of discretion in the sanction.

The order dismissing appellants' wrongful discharge cause of action is reversed. The order requiring appellants' counsel to pay $500 to respon-

dents' counsel is affirmed.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied April 23, 1985, and respondents' petition for review by the Supreme Court was denied June 6, 1985.